UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-CR-161 (DSD/DTS)

UNITED STATES OF AMERICA,

        PLAINTIFF,

**DEFENDANT'S SUPPLEMENT TO POSITION REGARDING SENTENCING**

v.

LORENZO EUGENE HEARD, JR.,

        DEFENDANT.

    The Defendant Lorenzo Eugene Heard, by and through his attorney, Matthew J. Mankey, hereby presents to the court his supplement to his position with respect to sentencing factors as to "Hard Time."

**A Sentence Reduction Is Warranted to Reflect "Hard Time"**

    Mr. Heard has been in custody at the Sherburne, Washington, and Douglas County Jails since May 21, 2019, a period of nearly 2 ½ years.

    As the Court knows, county jails are designed for short-term stays pending trial, not for years-long imprisonment. As a result, none of the resources or facilities that would be available to Mr. Heard in the Bureau of Prisons exist at these local facilities. There are no classes available to him and limited legal materials.

    During the pandemic, Mr. Heard has been confined to his unit 24 hours a day. There have been 10 or more lockdowns during COVID outbreaks. These lasted several weeks at a time or more. The first lock down was a couple months. During the first lockdown, Mr. heard was confined to his cell 24 hours a day for 3 to 4 days. He was not allowed out to

call his family or take a shower. The subsequent lockdowns allowed Mr. Heard out of his cell one hour a day only to be restricted to his unit.

There is no opportunity to go outside at the jail. There is no prison yard. Even the windows are fogged so the inmates cannot see beyond the cinderblock walls. In addition, the lights are left on 24 hours a day, so the inmates live in constant, garish, artificial daylight.

Inmates have only recently been given access to the gym. For 14 months, therefore, Mr. Heard had no opportunity for exercise or recreation. Now, he is permitted to go to the gym for one hour a day, three days a week.

Originally, Mr. Heard was housed at the Sherburne County Jail when COVID restrictions started. He was moved from Sherburne County Jail to Washington County Jail then to the Douglas County Jail and back to Sherburne County Jail.  Each time he has had to be placed into quarantine for 14 days. During this quarantine, he is allowed out one hour a day. In the quarantine unit, he has no direct contact with any other inmates. Once the 14-day quarantine has past, he is allowed into a unit where the previous discussed restrictions apply.

Mr. Heard's case started in May of 2019. He has been incarcerated during the entire pandemic. He has exercised his right to an in-person appearance. By doing so, his Sentencing has been continued multiple time due to COVID thus prolonging his incarceration.

Mr. Heard is a devout Hebrew Isrealite.  His religion is a hybrid between Judaism and Christianity that mandates that he eat kosher food.  Obtaining food at the Sherburne,

Washington, and Douglas County jails has been extremely difficult. At one point, Mr. Heard was transferred for several days to the Washington County Jail due to the Sherburne jail's inability to meet his dietary needs. The Washington County Jail could likewise not feed Mr. Heard consistent with his dietary restrictions and therefore transferred him to the Douglas County facility.

Once in Douglas County, after being assured by the U.S. Marshalls that he would be provided a kosher diet, he was again questioned by jail staff about the legitimacy of his religious beliefs and his dietary needs. Often Mr. Heard has had the draconian choice of either consuming food that violates his religious beliefs or going hungry. Mr. Heard received nothing but peanut butter and jelly on tortillas for 4 months as his evening meal. In this sense, Mr. Heard's time in these facilities created a situation that adds another dimension to his "hard time" that simply isn't present with other inmates with less severe dietary restrictions. Because of his race, his request for a kosher diet was often not taken seriously by jail staff which resulted in disagreement and argument between Mr. Heard and jail staff. As a result, Mr. Heard was subjected to punishment by jail staff that caused him to lose additional privileges in the jails. For example, in Douglas County the staff confiscated religious materials from Mr. Heard's cell. As a result, the undersigned was required to contact jail administration to get his religious materials returned. However, Mr. Heard was then transferred to a "Special Management Unit" that put video surveillance 24 hours per day.

This Court has repeatedly recognized that a downward variance is appropriate to reflect the draconian conditions one faces from prolonged incarceration in a county jail.

*See, e.g., United States v. Pawinee Unpradit*, 17-CR-107(4) (DWF/TNL), Sent. Tr. (Oct. 15, 2019) at 29 (granting 4 month "hard time credit"); *United States v. Lendale Thomas*, 07-CR-297(9) (DWF/JSM), Doc. No. 751 at 3 (sentence included 7-month downward variance "to account for Defendant's pretrial custody in the Sherburne County Jail"); *United States v Edmonds*, 920 F.3d 1212, 1214 (8th Cir. 2019) (noting this Court granted three-month "hard time" credit for time spent in county jail). *See also United States v. Fiorito*, 07-CR-212(1) (PJS/JSM) Doc. 418 at 74 (noting "that the conditions at the jail are harsher than the conditions at a typical federal prison" and agreeing to "give weight to this fact when deciding on Fiorito's sentence").

Based on the unusual hardships suffered by Mr. Heard due to his legitimately held religious beliefs, he respectfully requests that the Court consider a further downward variance.

Dated: November 22, 2021                                           Respectfully submitted,

*/s/ Matthew J. Mankey*
Attorney for Defendant
Attorney ID #230303
5500 Wayzata Blvd, Suite 1025
Golden Valley, MN
(763) 560-4388
matthewmankey@comcast.net